UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE L. SIMMONS,

    Plaintiff,

vs.

WILLIAM JOHNSTON, *et al.*,

    Defendants.
    _____/

Case No. 1:08-cv-822

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

Plaintiff has filed a pro se civil rights action arising from the termination of his position as a part-time laundry attendant at the Holiday Inn West in Kalamazoo (sometimes referred to as "the hotel"). This matter is now before the court on defendants' motion to dismiss and for summary judgment (docket no. 28).[1]

### I.    Plaintiff's complaint

Plaintiff's complaint names five individual defendants: William Johnston (identified as the Chairman/President/Owner of the Greenleaf companies, Greenleaf Trust and Greenleaf Holdings, and subsidiaries including Greenleaf Hospitality, Greenleaf Ventures, the Radisson Plaza Hotel, and the Holiday Inn West); Brad Schmitz, the general manager of the hotel; Amanda Appell,

---

[1] Plaintiff has filed three documents in response to this motion: "Plaintiff's pre-answer motion in opposition to strike certain defendant's motion to dismiss or, in the alternative for summary judgement " (docket no. 34); a 65-page "Brief in support of plaintiff's pre-answer motion in opposition to strike certain defendant's motion to dismiss or, in the alternative for summary judgment" (docket no. 35); and, an 89-page collection of exhibits (docket no. 36). The court notes that "pre-answer motion," which has been docketed as part of the response, seeks leave to exceed the 25-page briefing limit. The court will allow plaintiff to file the oversized brief.

the human resources officer at the hotel; Sean Gillette, the operations manager at the hotel; and Julie Fields, the laundry department manager at the hotel. Compl. at ¶¶ 9-13.

Plaintiff's complaint is a collection of rambling allegations and legalese which is difficult to decipher. Nevertheless, to properly review these allegations and the issues raised in defendants' motion, it is necessary to first set out the underlying facts as alleged by plaintiff. In performing this task, the court has a duty to read this *pro se* complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987). However, the court is not required to re-write the complaint or conjure up legal claims that are not apparent from the pleading.[2]

In October 2006, plaintiff applied for a position as an attendant in the laundry department at the hotel. Compl. at ¶ 25. He was hired as a part-time laundry attendant, with a work schedule of Monday through Friday, from 8:00 a.m. to 1:00 p.m. *Id.* In December 2006, a white employee, non-party Lynn Scotell, reported an act of sexual harassment, which plaintiff characterized as "repetitious gossip" against him in violation of the "Company Harassment Free Workplace Policy." *Id.* at ¶ 26.[3]

---

[2] *See Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009) ("[C]ourts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Neither may the court 'conjure up unpled allegations,' *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975), because to hold otherwise would require the court 'to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).)

[3] In a later filing, plaintiff submitted a copy of a note from the hotel's files which memorialized a "verbal warning" issued to him on February 20, 2007, for violating the company's sexual harassment policy.

In March 2007, non-party Jennifer Scotell (Lynn's daughter) took a full time position "and continued the repetitious gossip against [plaintiff]." *Id.* at ¶¶ 27-28. Some of plaintiff's allegations regarding Jennifer Scotell are impossible to decipher. However, it appears that at some point either Jennifer Scotell or plaintiff complained to the hotel's human resources department. *Id.*

On or about July 5, 2007, plaintiff reported Jennifer Scotell's "work place harassment" to defendant Gillette, asking Gillette to "direct Jennifer to cease the discriminatory acts or discrimination charges would be filed." *Id.* at ¶ 28. On or about July 17, 2007, in retaliation for plaintiff's "opposition to take action against the discrimination," defendant Gillette took an adverse employment action against plaintiff of a "lesser reprimand for hanging towel over a basket [sic]." *Id.* at ¶ 29.[4] Defendant Fields apparently witnessed the same "acts" performed by a white employee on August 6, 2007, but did not impose a such a reprimand on that "similarly situated employee." *Id.*

On or about August 15, 2007, Jennifer Scotell made a racial slur, apparently directed at plaintiff, that "I will work you like a slave." *Id.* at ¶ 30. This was reported to Gillette, who allegedly stated "History repeats itself" [sic]. *Id.* Plaintiff alleged that the latter statement exhibited Gillette's "racial bigotry" and added to the hostile work environment created by Jennifer and Lynn

---

*See* docket no. 36-9. The warning was issued for "talking about his sex life in the laundry room," and telling his "fellow team members" that "he likes to walk behind them or that they look good in those pants or that he likes the way they walk." *Id.* The note concludes with the statement, "Larry clearly understands the sexual harassment policy and he is fully aware that if he violates the policy he would receive a written warning and could be subject to termination." *Id.*

[4] Plaintiff's retaliation allegation, i.e., that a defendant took a particular action "in retaliation of the opposition to take action against the discrimination, is repeated in various forms throughout the complaint. The use of this terminology appears to be the basis for plaintiff's alleged violation of 42 U.S.C. § 2000e-3(a). *See* discussion at § II.B.2.a, *infra*. For this reason, the court will re-state plaintiff's allegation with the terminology as set forth in § 2000e-3(a).

Scotell. *Id.* On or about September 5, 2007, defendant Fields threatened to terminate plaintiff's employment if he refused to work past 1:00 p.m. *Id.* at ¶ 31. Plaintiff alleged that this threat was made in retaliation of his opposition to the employer's discriminatory practices. *Id.* On or about September 26, 2007, defendants Fields and Appell threatened to reduce plaintiff's hours or terminate plaintiff's employment if he refused to work past 1:00 p.m. *Id.* at ¶ 32. Plaintiff alleged that this threat was also in retaliation for his opposition to the employer's discriminatory practices. *Id.* Finally, on or about October 1, 2007, defendants Appell and Schmitz terminated plaintiff "for insubordination otherwise for refusing or failing to perform work or willfully or deliberately neglecting any duty or failed to carry out a reasonable job assignment past 1 pm [sic]." *Id.* at ¶ 32. Plaintiff alleged that the termination of his employment in retaliation for his opposition to the employer's discriminatory practices. *Id.*

On November 17, 2007, plaintiff filed a discrimination claim with the Michigan Department of civil Rights and the United States Equal Opportunity Commission ( EEOC). *See* docket no. 1-2. The EEOC closed its file on June 9, 2008, after determining that it was unable to conclude that the information obtained established violations of the statutes. *See* docket no. 1-3.

Plaintiff filed his complaint on August 29, 2008, setting forth four counts. In Count I,"Unlawful employment practice claim," plaintiff alleges that defendant Gillette's April 15, 2007 statement that "History repeats itself" was a racial epithet conveying the idea of racial bigotry, and that this epithet or bigotry was "imputed to" defendants Appell and Schmitz, as the "discriminatory animus" for terminating plaintiff's employment. Count I further alleges that Defendant Johnston, President, CEO and owner of the entity that operates the hotel, is vicariously liable for these acts

4

performed by the hotel's managers (Gillette, Appell and Schmitz), and that all of these defendants are liable for violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

In Count II, "Unlawful retaliation and harassment claim," plaintiff alleges that the July 17, 2007 "lesser reprimand" given by defendant Gillette was an adverse action in retaliation for plaintiff opposing Jennifer Scotell's discriminatory acts, which were reported to Gillette back on July 5, 2007. According to plaintiff, Gillette's actions are imputed to defendants Schmitz and Johnston, which results in a violation of 42 U.S.C. § 2000e-3(a). In addition, defendants Gillette, Fields, Appell and Schmitz were "negligent per se" in failing to stop plaintiff's wrongful retaliatory discharge, all in violation of 42 U.S.C. § 2000e-3(a).

In Count III, "Impairment of equal rights to seek performance of and enforce contracts claim," plaintiff alleges that defendants Appell and Fields impaired plaintiff's equal rights in his employment contract by threatening to reduce plaintiff's work schedule or terminate his employment in violation of 42 U.S.C. § 1981. Further, plaintiff maintains Defendant Schmitz violated § 1981 by terminating plaintiff's employment and defendant Johnston is vicariously liable under § 1981 for the acts of the hotel management.

In Count IV, "Intentional discrimination," plaintiff alleges that defendant Schmitz violated 42 U.S.C. § 1981a(a)(1) and (b)(1) because of the retaliatory and discriminatory discharge of plaintiff. Further, plaintiff alleges Gillette, Appell and Fields are liable under these statutes because they singled out plaintiff to fire him on the "tainted" charge of insubordination, and that defendant Johnston is also vicariously liable for these actions.

5

## II. Defendants' motion

## A. Legal Standard

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.[5] Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[5] While this motion bears the title "motion to dismiss or, in the alternative, for summary judgment," defendants' motion is based upon the matters set forth in the 107 pages of attached exhibits. Because this motion is primarily (if not exclusively) one for summary judgment, the court will treat it as such.

**B.     Discussion**

**1.     The corporate and business entities**

Plaintiff's complaint is directed against five individual defendants: William Johnston, Brad Schmitz, Amanda Appell, Sean Gillette and Julie Fields.[6] In their motion, defendants seek summary judgment for Greenleaf Capital, Inc. (operating under the assumed name of The Greenleaf Companies), Greenleaf Trust, Catalyst Development Co., L.L.C. (formerly known as Greenleaf Holdings, L.L.C.) and the Radisson Plaza Hotel. *See* docket no. 28. Defendants also identify an additional defendant, Greenleaf Hospitality Group, Inc., f/k/a Greenleaf Ventures, Inc., which operated the hotel that employed plaintiff. *Id.* Defendants' motion seeking dismissal or other relief on behalf of these business entities is not properly before the court. Plaintiff has not named any of these business entities as defendants in this action. The only connection that these entities have to this legal action is through William Johnston, whom plaintiff sues in his capacity as the chairman, president, or owner of various business entities. Plaintiff's claim against Mr. Johnston is brought under a theory of vicarious liability, presumably because he exercised some type of supervisory control over the other individual defendants. Accordingly, defendants' motion is moot to the extent it seeks summary judgment or other relief for Greenleaf Capital, Inc., Greenleaf Trust, Catalyst Development Co., L.L.C., the Radisson Plaza Hotel or Greenleaf Hospitality Group, Inc.[7]

---

[6] The court notes that these five individuals are the only defendants listed on the docket sheet.

[7] While the court disagrees with counsel's conclusion regarding the identification of the defendants in this action, counsel cannot be faulted for taking steps to protect the interests of all of her clients.

### 2. Title VII claims

#### a. Plaintiff's statutory claims

Plaintiff brings Counts I and II under provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. In Count I, plaintiff alleged a violation of § 2000e-2(a)(1), which provides that:

> It shall be an unlawful employment practice for an employer--
>
> > (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

In Count II, plaintiff alleged a violation of § 2000e-3(a), which provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

#### b. Defendants Schmitz, Appell, Gillette and Fields

Defendants correctly point out that defendants Schmitz, Appell, Gillette and Fields are not proper defendants in a Title VII action. "The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001), *citing Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997). An employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each

of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e-(b). It is uncontested that plaintiff was an employee of Holiday Inn West, which was operated by Greenleaf Hospitality Group, Inc. (formerly known as Greenleaf Ventures, Inc.). Simmons Dep. at 24-26 (docket no. 29-3); "At Will Employment" agreement (docket no. 29-5); Schau Aff. at ¶¶ 1-9 (docket no. 8). There is no evidence that plaintiff was employed by defendants Schmitz, Appell, Gillette and Fields, all of whom held managerial positions at the hotel. *See* Answer at ¶¶ 10-13; Defendants' interrogatory responses (docket nos. 36-4, 36-5 and 36-10). Accordingly, defendants Schmitz, Appell, Gillette and Fields are entitled to summary judgment with respect to the Title VII claims alleged against them in Counts I and II.

        **c.**        **Defendant Johnston**

Defendant Johnston is the sole shareholder and president of Greenleaf Hospitality Group, Inc., a corporation which operated the hotel under the assumed name of "Holiday Inn West." Schau Aff. at ¶ 4. Defendants contend that Mr. Johnston is not individually liable under Title VII simply because he is the sole shareholder and president of a corporate employer. Defendants have not cited, and this court has not located, any Sixth Circuit opinion that explicitly addresses this question. However, the court's attention is directed to the Eleventh Circuit's opinion in *Dearth v. Collins*, 441 F.3d 931, 933-34 (11th Cir. 2006), which addressed this issue and concluded that the alter ego doctrine does not permit individual capacity liability to be imposed under Title VII against an employer's president, director and sole shareholder. The *Dearth* opinion provided in pertinent part as follows:

> Dearth also argues that even if individual employees generally cannot be held liable under Title VII, we should make an exception to this rule in the private sector based on the "alter ego" doctrine...

9

We reject Dearth's position on two grounds. First, there is nothing in Title VII that supports Dearth's claim that individual capacity liability can be imposed on the basis of the alter ego doctrine, and the only circuit that we found to have addressed the issue rejected the argument. *See Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir.2001) (rejecting alter ego theory of individual capacity liability in Title VII lawsuit against the president of a company and citing *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 n. 11 (7th Cir.1995)). [FN2] In *AIC Security Investigations*, the Seventh Circuit rejected the theory that Vrdolyak, the individual defendant and sole shareholder of AIC Security Investigations, Ltd. ("AIC"), could be held individually liable under the ADA. The Seventh Circuit found nothing in the ADA to support individual liability and noted that "[t]he employing entity is still [potentially] liable." 55 F.3d at 1282. The plaintiffs nevertheless argued, as Dearth does here, that "even if individuals cannot be liable under the ADA, Vrdolyak can somehow be liable as AIC's 'alter ego.'" *Id.* at 1282 n. 11. The Seventh Circuit, however, saw "no good reason why it should make any difference for our analysis whether Vrdolyak was AIC's alter ego" and stated that "as to [Vrdolyak's] individual capacity liability, it does not matter even if she was AIC's alter ego." *Id.*; *see also Worth*, 276 F.3d at 262. The Seventh Circuit acknowledged that if a sole shareholder abused the corporate form and the corporate veil were pierced, the sole shareholder might feel the financial "pinch." *See AIC Security Investigations*, 55 F.3d at 1282 n. 11 (noting that Vrdolyak "might be effectively liable if the corporate veil were pierced, and as sole shareholder, she will necessarily absorb the pinch from AIC's liability"). However, as the Seventh Circuit also recognized, that issue is separate and apart from the question of whether the alter ego doctrine can provide an independent basis for individual capacity liability under Title VII in the first place. *Id.* Furthermore, in this case, there is no allegation that [the corporate employer] is insolvent or unable to pay any Title VII judgment against it. We thus agree with the Seventh Circuit and conclude that the alter ego doctrine does not create an exception to the rule against individual employee liability in Title VII cases.

> [FN2.] In *EEOC v. AIC Security Investigations, Ltd.*, the Seventh Circuit concluded that the plaintiffs had waived the alter ego argument, but subsequently discussed, in dicta, the merits of whether the alter ego doctrine could be used to impose individual liability under the Americans with Disabilities Act ("ADA"). Title VII, the ADA, and the Age Discrimination in Employment Act all have similar definitions of "employer" and "[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably." *AIC Security Investigations*, 55 F.3d at 1279-80. We do the same here by relying on *AIC Security Investigations* as persuasive authority.

*Dearth*, 441 F.3d at 933-34.

The court finds the Eleventh Circuit's reasoning persuasive and consistent with the opinions in this circuit addressing individual liability under Title VII. *See, e.g., Turner v. Catholic Health Initiatives*, 35 Fed. Appx. 166, 167 (6th Cir. 2002) (affirming district court's order dismissing an employee's Title VII claim against individual defendants, including the employer's CEO and president); *Little*, 265 F.3d 357 at 362; *Wathen*, 115 F.3d at 405. *See also, Russell v. Bronson Heating and Cooling*, 345 F. Supp. 2d 761, 781-82 (E.D. Mich. 2004) (rejecting the plaintiff's claim that the employer's president and sole shareholder should be individually liable under Title VII as the employer's alter ego, noting that the Sixth Circuit does not allow individual liability under Title VII and "Congress' intent not to impose liability upon individuals under Title VII").

For these reasons, the court concludes that Mr. Johnston is not individually liable under Title VII simply because he was the president and sole shareholder of plaintiff's employer. Accordingly, Mr. Johnston's motion for summary judgment should be granted with respect to Counts I and II.

### 3. § 1981 claim against defendant Johnston

#### a. Count III

In Count III, plaintiff alleged that Mr. Johnston violated 42 U.S.C. § 1981(a), which provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." § 1981(b).

"Section 1981 prohibits racial discrimination in the making and enforcing of private contracts." *Newman v. Federal Express Corp.*, 266 F.3d 401, 407 (6th Cir. 2001). The Supreme Court explained that § 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger*, 539 U.S. 244, 276 (2003), quoting *McDonald v. Sante Fe Trail Transp. Co.*, 427 U.S. 273, 295-96 (1976). Section 1981 claims are analyzed under the Title VII *McDonnell Douglas/Burdine* framework. *Newman*, 266 F.3d at 407. Thus, plaintiff must show that "1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Id.*

This court's analysis of a § 1981 claim is essentially the same as a Title VII claim, with one important exception. Unlike Title VII, individuals may be held liable for violations of § 1981. *See Jones v. Continental Corporation*, 789 F.2d 1225, 1231 (6th Cir. 1986); *Wagner v. Merit Distribution*, 445 F. Supp. 2d 899, 909 (W.D. Tenn. 2006). To establish individual liability under § 1981, the individual defendant must have been personally involved in the discriminatory action. *Wagner*, 445 F. Supp. 2d at 909; *Allen v. Ohio Dept. of Rehabilitation and Correction*, 128 F. Supp. 2d 483, 495 (S. D. Ohio 2001). The personal involvement required for § 1981 liability includes direct participation in the alleged violation, as well as gross negligence in the supervision of the subordinates who committed the wrongful acts and the failure to take action upon receiving

information that constitutional violations are occurring. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2nd Cir. 2004). *See Amin v. Quad/Graphics, Inc.*, 929 F. Supp. 73, 78 (N.D. N.Y. 1996) ("[t]he element of personal involvement may be satisfied by proof that a supervisor had knowledge of the alleged acts of discrimination and failed to remedy or prevent them").

Mr. Johnston contends that while he is the sole shareholder and president of the entity that owned the hotel, he had no personal involvement in any employment decisions involving plaintiff. The court agrees. Viewing the evidence in the light most favorable to plaintiff, the court concludes that there is no evidence that Mr. Johnston was personally involved in the alleged discrimination or retaliation against plaintiff, that he exercised gross negligence in supervising the employees or that he even had knowledge of the situation. At his deposition, plaintiff testified that Mr. Johnston did not personally participate in the discriminatory or retaliatory acts alleged. Simmons Dep. at 65-67. Plaintiff's only connection with Mr. Johnston was the fact that Johnston owned Greenleaf Hospitality Group, the entity listed as the employer on plaintiff's pay stubs. *Id.* at 67. Plaintiff admitted that he included Mr. Johnston in this action "because of [Johnston's] vicarious liability" as owner of the "Greenleaf entities." *Id.* at 68. Plaintiff has provided no factual basis to support his § 1981 claim against Mr. Johnston. Accordingly, Johnston is entitled to summary judgment with respect to Count III.

**b.     Count IV**

In Count IV, plaintiff alleged that Mr. Johnston committed "intentional discrimination" in violation of 42 U.S.C. § 1981a(a)(1) and (b)(1). Section 1981a permits victims of intentional discrimination to recover compensatory and punitive damages. *See Burlington*

*Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72 (2006); *West v. Gibson*, 527 U.S. 212, 219 (1999).[8]

Section 1981a(a)(1) provides a right of recovery for certain civil rights actions:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

In addition, § 1981a(b)(1) provides for punitive damages:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

Plaintiff's claim against Mr. Johnston for "intentional discrimination" under § 1981a should be dismissed. Section 1981a does not create a separate cause of action for "intentional

---

[8] As the Supreme Court explained in *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001):

> In 1991 . . . Congress further expanded the remedies available in cases of intentional employment discrimination to include compensatory and punitive damages. *See* 42 U.S.C. § 1981a(a)(1). At that time, Rev. Stat. § 1977, 42 U.S.C. § 1981, permitted the recovery of unlimited compensatory and punitive damages in cases of intentional race and ethnic discrimination, but no similar remedy existed in cases of intentional sex, religious, or disability discrimination. Thus, § 1981a brought all forms of intentional employment discrimination into alignment, at least with respect to the forms of relief available to successful plaintiffs. However, compensatory and punitive damages awarded under § 1981a may not exceed the statutory limitations set forth in § 1981a(b)(3), while such damages awarded under § 1981 are not limited by statute.

*Pollard*, 532 U.S. at 851.

discrimination." Rather, this statute authorizes the award of compensatory and punitive damages for violations of Title VII. "Implicit in § 1981a is the requisite that an action will not exist under the Civil Rights Act absent a primary claim under another substantive act. In short, there is no such thing as a § 1981a claim." *Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp. 2d 815, 839 (E.D. Tex. 2004) (citations and internal quotations omitted). *See Powers v. Pinkerton, Inc.*, 28 F. Supp. 2d 463, 472 (N.D. Ohio 1997), *aff'd* 168 F.3d 490 (6th Cir. 1998) ("a claim based on § 1981a does not afford an independent ground for relief but is a statutory provision for additional recovery of damages in Title VII cases"). Because plaintiff does not have a viable Title VII claim against Johnston, his claim for damages under § 1981a should be dismissed. *See, e.g., Powers*, 28 F. Supp. 2d at 472 (court found it unnecessary for the defendants to move for summary judgment on the plaintiff's § 1981a claim when the plaintiff's underlying civil rights claims had been dismissed). Johnston is entitled to summary judgment with respect to Count IV.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 28) be **GRANTED**, and that Counts I and II be **DISMISSED** as to all defendants, and that all claims against William Johnson be **DISMISSED**.


Dated: August 3, 2009                         /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).